IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

WILLIAM MELVIN,                                    Civil Action No. 2:11-cv-00288

                    Plaintiff,

v.

PYOD, LLC, and TOBIE GRIFFIN,

                    Defendants.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

         Plaintiff William Melvin ("Plaintiff") is a consumer debtor whose delinquent auto

loan gives rise to this dispute.  After collection efforts were undertaken and a lawsuit

was filed in Tennessee state court, Plaintiff sued Defendants PYOD, LLC ("PYOD"), and

Tobie Griffin ("Griffin") (collectively, the "Defendants"), for violations of the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").  The Defendants come

before this Court seeking dismissal of Plaintiff's claims on a Motion for Summary

Judgment.  In response, Plaintiff must demonstrate the existence of genuine issues of

disputed material fact in order to be entitled to a trial on the merits of his claims.

Because there are no genuine issues of material fact in dispute, Defendants are entitled

to Summary Judgment.

## FACTS

### I. THE UNDERLYING DEBT

CitiFinancial, Inc. (formerly d/b/a TransSouth), was the original creditor on an auto loan extended to Plaintiff. Plaintiff's account was charged off on March 27, 2007. (*See* Exhibits B-C attached to the Affidavit of Tricia T. Olson ("Olson Aff.") (*All Exhibits hereafter are attached to the Olson Aff.*)) The total principal balance owing on Plaintiff's account was $5,344.20. (Exs. B-C.) Plaintiff's delinquent account was assigned to PYOD in 2007. (Exs. B-C.)

After it acquired Plaintiff's account, PYOD placed Plaintiff's account with its servicer, non-party Resurgent Capital Services, LP ("Resurgent"), which manages and services delinquent accounts. (*See* pp. 50:17-51:1 of the Deposition of Tonya Henderson, attached as Exhibit D to Olson Aff. ("Henderson Dep.")) Later, Resurgent hired a Tennessee law firm, Buffaloe & Associates, PLC ("Buffaloe"). (Henderson Dep. at pp. 50:17-51:1.)

Plaintiff does not dispute that at one time TranSouth extended him credit to purchase an automobile. (*See* pp. 15:18-22, 25:2-17 of the Deposition of William Melvin, attached as Exhibit E to Olson Aff. ("Melvin Dep."); Ex. F.) Plaintiff also testified that he understood that his loan was sold to CitiBank, and he testified that he remembers having made a payment to "Citi." (Melvin Dep. at p. 29:15-17, 30:18-19, 44:15-45:9.) Plaintiff testified that he thought the loan was paid off, but then received a notice from a law firm regarding the "loan situation." (*Id.* at p. 15:24-16:17.)

Plaintiff believes that, on a Friday, sometime in 2005 or 2006, or possibly 2007, he paid the loan off in full. (*Id.* at pp. 31:19-33:8, 42:17-21.) He testified that he

received a collection call the Sunday immediately following the Friday on which he believes he paid the loan off, and that he told the collector the loan had been paid off, and that he did not hear from anyone about the loan for "almost a year" after that. (*Id.*) Plaintiff testified that his loan "rolled over," likely due to missed or partial payments, and that he entered into an amended agreement with TranSouth on or about March 18, 2004. (*Id.* at pp. 26:9-27:4, 39:18-41:24.) Under the amended agreement, Plaintiff agreed to pay 45 monthly installments of $259.20, starting in May of 2004 and continuing until January of 2008. (*Id.* at p. 41:7-24; Ex. G.) Plaintiff testified that he did not recall ever paying ahead on the loan. (Melvin Dep. at p. 42:10-16.) Except for stating that he "[thought he] paid the loan off under [his] personal beliefs," Plaintiff could not explain how, having not paid ahead on the loan, he could have possibly paid off the loan in full by 2005, 2006, or 2007, when the terms of the amended loan provided for payments to be made through January of 2008. (*Id.* at pp. 42:17-21, 65:1-13, 72:20-21.) Plaintiff testified that he made his loan payments by money order (*id.* at p. 31:2-3), but that he has not retained any records of the payments, nor receipts for the money orders. (*Id.* at pp. 52:2-53:1, 65:16-19.) Finally, Plaintiff testified – twice – that he has a "very bad memory." (*Id.* at pp. 70:21-22, 73:18-19.)

## II.  COLLECTION EFFORTS BY BUFFALOE & ASSOCIATES, PLC

Plaintiff testified that "it seemed possible" that he received a letter dated March 29, 2010 from Buffaloe & Associates, PLC. (Melvin Dep. at p. 66:20-23.) He testified further that he thought he also received a settlement offer from Buffaloe but disregarded it because he believed the loan had been paid in full. (*Id.* at p. 67:1-6.) Plaintiff testified that he "probably" threw Buffaloe's letters in the trash and that, generally speaking, he

throws away all mail addressed to him that appears to be collection-related. (*Id.* at p. 67:11, 76:22-77:10.)

Buffaloe's records reflect that it sent an initial demand letter to Plaintiff on or about March 29, 2010. (Affidavit of Joel Vallejo ("Vallejo Aff."), ¶ 2.) That letter stated the communication was an attempt to collect a debt, identified Defendant PYOD, LLC ("PYOD") as the creditor, and contained a dispute and validation notice. The letter also advised Plaintiff to direct all communications to Buffaloe. (*Id.*) Buffaloe's records further reflect that it sent Plaintiff offers to settle the debt on or about April 16, 2010, and on or about May 19, 2010. (*Id.* at ¶ 3.) Those letters also identified PYOD as the creditor, advised Plaintiff to direct all communications to B&A, and stated that the communications were attempts to collect a debt. (*Id.*)

## III. THE STATE COURT COLLECTION LAWSUIT

Buffaloe requested that Resurgent provide verified information regarding the amount owed. Resurgent-employee Griffin signed and verified a sworn document titled "Plaintiff's Affidavit of Indebtedness and Ownership of Account" (the "Affidavit of Indebtedness") (Ex. H.) Griffin, in her capacity as an authorized representative of PYOD, confirmed in the Affidavit of Indebtedness the principal amount owing, as reflected in PYOD's records maintained in the ordinary course of business. (*Id.* at ¶¶ 1-3, 5.) The total principal balance owing reflected in those records was $5,344.20. (*Id.* at ¶ 5.)

Griffin's job duties included verifying the accuracy of the account information contained in such affidavits and signing the affidavits. (See pp. 10:18-11:6 and 34:9-11 of the Deposition of Tobie Griffin, attached as Exhibit I to Olson Aff.) With respect to

Plaintiff's debt, Griffin verified all of the information contained in her Affidavit, including the principal balance, and she signed the Affidavit of Indebtedness in her own hand. (*Id.* at pp. 10:18-12:9, 34:9-10.)  In the Affidavit of Indebtedness, Griffin stated that the information contained in it was "true and correct to the best of [her] information and belief based on the Plaintiff's business records." (Affidavit of Indebtedness at ¶ 1.)

Griffin further stated in the Affidavit of Indebtedness that she had personal knowledge regarding PYOD's internal procedures for the creation and maintenance of its business records, as well as knowledge regarding the sources of account information that PYOD used in the ordinary course of its business.  (*Id.* at ¶¶ 1-3.)  Griffin then identified the specific data that she had reviewed from those business records.  (*Id.* at ¶¶ 3, 5.)

On September 30, 2010, Buffaloe filed a collection lawsuit in Tennessee state court on behalf of PYOD as assignee of CitiFinancial, Inc.  (Compl. ¶ 11, Olson Aff. Ex. J.)  That lawsuit was in the form of a civil warrant.  (Compl. ¶ 11.) Attached to the civil warrant was the Affidavit of Indebtedness.  (Compl. ¶ 11.)  On the civil warrant, Buffaloe sought the principal amount owing of $5,344.20, as confirmed by Griffin in the Affidavit of Indebtedness, plus "pre and post judgment interest accruing at the statutory rate of 10% and court costs of this cause of $114.50, and service of process fees in the amount of $25.00." (Compl. ¶ 13.)  The amount of interest sought by the civil warrant was determined by the law firm bringing the lawsuit – in this case, Buffaloe.  (*See*

Henderson Dep. p. 27:17-28:10; pp. 47:24-48:5 of the Deposition of Joel Vallejo, Ex. K to Olson Aff. ("Vallejo Dep.")[1])

In his deposition, Plaintiff could not explain what he believed to false, misleading or deceptive about the Affidavit of Indebtedness; he repeated that he thought he had "paid [the loan] off."[2] (Melvin Dep. at pp. 72:18-76:4.) On or about November 3, 2010, Plaintiff filed a Sworn Denial in the state court lawsuit. (Ex. L.) Ultimately, Buffaloe non-suited the collection lawsuit. Seven months later, Plaintiff commenced this lawsuit, alleging that Defendants violated various provisions of the FDCPA.

In this action, Plaintiff's primary contention is that Defendants did not, at the time the collection lawsuit was filed, have the means to prove the underlying debt, and had no intention of ever proving the underlying debt. More specifically, Plaintiff alleges that Griffin prepared the Affidavit of Indebtedness without having personal knowledge of the underlying facts, such that the Affidavit of Indebtedness constitutes a false representation under the FDCPA. (*See, e.g.,* Compl. at ¶¶ 53, 52, 53[3]-59.) Plaintiff also claims that Defendants made business decisions to proceed with collection efforts, including commencing the collection lawsuit, without possessing what Plaintiff deems to be sufficient documentation of Plaintiff's underlying debt. (*See, e.g.,* Compl. at ¶¶ 8, 21-

---

[1] Although Ms. Henderson's and Mr. Vallejo's cited testimony refer specifically to documents filed in different (albeit factually very similar) lawsuits, their single depositions were taken for use in fourteen cases consolidated by the Court for discovery purposes.

[2] Plaintiff also testified that he believed he was entitled to damages because of telephonic harassment he had endured (Melvin Dep. p. 76:15-77:2), though he made no allegations in his Complaint regarding collection calls or letters. (*See generally* Compl.)

[3] The paragraphs in Plaintiff's Complaint are numbered: ". . . 53, 52, 53, 54 ...." Defendants cite both paragraphs 53 here.

24, 27-29, 41-42, 44-45, 59-60.)  Last, Plaintiff alleges that the actions of PYOD violated the FDCPA, because, according to Plaintiff, it was required to have a Tennessee collection service license at the time of the collection efforts.  (S*ee* Compl. at ¶¶ 76-81.)

## LEGAL ARGUMENT

## I.    <u>LEGAL STANDARD TO BE APPLIED.</u>

Under Fed. R. Civ. P. Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988).  As to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To be genuine, the dispute must concern evidence upon which "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party need not support its motion with affidavits or other similar materials *"negating"* the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (emphasis in original). "[T]he burden on the moving party may be discharged by showing - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The analysis on summary judgment requires a determination of whether the party bearing the burden of proof has presented a jury question as to each element of its case. *Id.* at 322; *Taylor v. Medtronics, Inc.,* 861 F.2d 980, 987 (6th Cir.1988).

To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the jury. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989). As the Sixth Circuit has rather bluntly noted, a motion for summary judgment is a means by which to challenge the opposing party to "put up or shut up" on a critical issue. *Id.* Summary judgment is properly granted if the party who would bear the ultimate burden of proof at trial fails to establish an essential element of that party's claim. *See Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995).

The test for summary judgment is the same as a directed verdict: namely, "[t]he mere existence of a scintilla of evidence in support of the plaintiffs' position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. Accordingly, viewing the evidence in a light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

For purposes of responding to Defendants' Motion, Plaintiff cannot rest on mere averments, unsubstantiated allegations, or bald conclusions that are not supported by significant probative evidence. Instead, Plaintiff must come forward with specific facts to establish the elements of each one of his claims. The nonmoving party must produce

specific facts showing that a genuine issue remains. *Plant v. Morton Int.'l, Inc.,* 212 F.3d 929, 934 (6th Cir. 2000).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 866 F.2d at 1472, 1479-80. Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 65 (6th Cir. 2001). If Plaintiff cannot do so, his claims must fall.

In this Motion, Defendants challenge the Plaintiff to demonstrate that indeed he is entitled to trial on the merits of each of his claims.

## II.   A DEBT COLLECTOR MAY FILE A COLLECTION LAWSUIT WITHOUT HAVING THE IMMEDIATE MEANS TO PROVE UP THE UNDERLYING DEBT.

Plaintiff claims PYOD violated the FDCPA by filing (through its Tennessee attorneys, Buffaloe & Associates) a lawsuit, without having what Plaintiff says is an immediate means to "prove" the debt, violated the FDCPA. To the contrary, it is well-established that a debt collector does not violate the FDCPA merely by filing suit on an otherwise valid indebtedness without having the immediate means to prevail at trial. *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 331-33 (6th Cir. 2006). Nor does the FDCPA require debt collectors to be *certain* they will prevail on their claims before they file collection lawsuits. *See Hill v. Javitch, Block & Rathbone, LLP*, 574 F. Supp. 2d 819, 824 (S.D. Ohio 2008); *Deere v. Javitch, Block & Rathbone, LLP*, 413 F. Supp. 2d 886, 891 (S.D. Ohio 2006) ("filing a lawsuit supported by the client's affidavit attesting to the existence and amount of a debt [is] not a false representation about the character or legal status of a debt, nor is it unfair or unconscionable"). As a result, any

claim premised on the allegation that the debt might not have been immediately provable upon filing of the civil warrant does not form the basis of an actionable claim.

With respect to Plaintiff's allegations of a pattern and practice of business decisions and business practices to deliberately refrain from obtaining evidence necessary to prevail in State court, Plaintiff will have to present admissible evidence to the Court to substantiate these claims. The allegations and speculation contained in his Complaint are not sufficient, and are contradicted by the business records upon which the civil warrant and Affidavit of Indebtedness are based, and the deposition testimony of Buffaloe, who, though not named in Plaintiff's action, prosecuted the State court action against Plaintiff.

## III. PLAINTIFF'S AFFIDAVIT AND CIVIL WARRANT-BASED CLAIMS FAIL.

### A. The civil warrant and Affidavit of Indebtedness were not false, deceptive, or misleading.

Plaintiff alleges that the civil warrant and Affidavit of Indebtedness falsely represented the character, amount, or legal status of Plaintiff's debt, in violation of 15 USC § 1692e(2)(A).[4] (Compl. ¶¶ 64, 72.) The undisputed facts show otherwise. The character of Plaintiff's debt is correctly represented in the Affidavit of Indebtedness to be the result of an extension of credit to Plaintiff by CitiFinancial, Inc., formerly TranSouth. (Exs. B, H.) The Affidavit of Indebtedness sets forth the basis of PYOD's ownership of the account. (Ex. H.)

PYOD's ownership, as demonstrated by the chain of assignment, and the origin of Plaintiff's debt, cannot be disputed. (Ex. A.) Similarly, the amount set forth in the

---

[4] 15 USC 1692e(2)(A) prohibits: "The false representation of the character, amount, or legal status of any debt[.]"

Affidavit of Indebtedness of $5,344.20 cannot be disputed. (Ex. H.) Plaintiff cannot show that he paid off the debt as he claims and his own explanation of the payments he made do not square with his claims of having paid the debt in full.

The status of the debt, that it was due and owing and was the subject of a Tennessee State court collection lawsuit, is similarly undisputed. Simply, the Affidavit of Indebtedness and civil warrant are not a false representation of the character, amount, or legal status of Plaintiff's debt. The representations made by Defendants are entirely consistent with the information contained in PYOD's records, which have not and cannot be disputed. (Ex. B, C, H.) Plaintiff cannot show that Defendants falsely represented the character, amount, or legal status of Plaintiff's debt, and Defendants are entitled to summary judgment on Plaintiff's section 1692e(2)(A) claim.

Indeed, in two cases in the Eastern District with similar facts, the court granted summary judgment in favor of defendants on the false representation issue. In those cases, defendants had filed a collection action based on a civil warrant and affidavit that contained information provided by the original creditor upon its transfer of the account. *Clara Collins v. Portfolio Recovery Associates, LLC, Retha Gray, and McLemore & Edington, PLLC,* Case No. 2:12-cv-138 (E.D. Tenn. June 7, 2013) at pp. 12-13; *White v. Sherman Financial Group, et al.*, 3:12-cv-00404, Docket No. 56 at pp. 6-12 (E.D. Tenn. November 4, 2013).

Here, as in *Collins* and *White*, Defendants relied on the information originally provided by the original creditor. There is no genuine issue of material fact as to whether Defendants made any false representations—they did not. Plaintiff's 1692e(2)(A) claim fails, and Plaintiff's additional claims under §§ 1692e and 1692e(10)

must likewise fail.

### B. Defendants did not use false, deceptive or misleading representations or deceptive means to attempt to collect Plaintiff's debt.

Plaintiff alleges that Defendants used false representations to attempt to collect Plaintiff's debt, in violation of sections 1692e[5] and 1692e(10)[6], when Defendants filed the Affidavit of Indebtedness attached to the civil warrant. (Compl. ¶¶ 63-64, 67-68, 72, 75, 81.) This claim rises or falls based on the Court's ultimate determination regarding the validity of the Affidavit of Indebtedness and the civil warrant.

If the Court finds in this case, as the courts did in *Collins* and *White*, that Defendants are entitled to summary judgment on Plaintiff's claims that the Affidavit of Indebtedness and civil warrant were false, misleading or deceptive, it also stands to reason that there can be no corollary violation of sections 1692e and 1692e(10) for filing the Affidavit and civil warrant in the first place. Consequently, and by logical extension, Defendants' "attempt to collect" the debt through the use of the Affidavit of Indebtedness and the civil warrant did not employ false or deceptive means.

### C. Defendants did not threaten to take any action that cannot legally be taken.

Plaintiff contends that by filing the "false, deceptive, and misleading" Affidavit of Indebtedness attached to the civil warrant, Defendants threatened to take action that cannot legally be taken, in violation of 1692e(5).[7] (Compl. ¶¶ 67-68, 75, 81.) Like

---

[5] 15 USC 1692e states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

[6] 15 USC 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

[7] 15 USC 1692e(5) makes it a violation to "threat[en] to take any action that cannot legally be taken or that is not intended to be taken."

Plaintiff's other claims based on the Affidavit of Indebtedness and civil warrant, this claim rises or falls on the Court's decision regarding the propriety of the Affidavit of Indebtedness and the civil warrant. If the Plaintiff cannot show facts demonstrating the Affidavit of Indebtedness and civil warrant were "false, deceptive, or misleading" – and Defendants maintain that he cannot – then accordingly Defendants did not threaten to take action that could not legally be taken by commencing and later dismissing the State court action based on the civil warrant and Affidavit of Indebtedness.[8]

Under similar facts, the *Collins* court found in favor of the defendants on the plaintiff's 1692e(5) claim, stating:

> [Defendant] PRA purchased the interest in a defaulted debt accrued using Plaintiff's personal information and filed a legal civil warrant in state court seeking recovery of the amount of default. After Plaintiff disputed the debt, PRA dismissed the action. Plaintiff has, in this instance, merely relied upon her pleadings and has drawn inferences that are not based upon any record evidence to conclude that Defendants' action of dismissing the lawsuit demonstrates that they had no intention of pursuing the collection action against Plaintiff in Tennessee state court... Plaintiff has offered no evidence regarding the intentionality of Defendants' actions. The Court notes that its obligation to draw all reasonable inferences in Plaintiff's favor does not require the Court to give credence to Plaintiff's inferences from unsupported factual assertions. The Court finds that the facts contained in the record do not support Plaintiff's inference – namely, that the dismissal of the lawsuit some seven months after it was filed in and of itself demonstrates that Defendants never intended to pursue the action.

(*Collins*, at pp. 13-14; *see also White*, at p. 11, citing *Collins*.) Plaintiff makes identical inferences with respect to Defendants' conduct in bringing and later dismissing the state court lawsuit, and his inferences are likewise unsupported by any record evidence. The Court should find, as the *Collins* and *White* courts did, that Plaintiff's § 1692e(5) claim

---

[8] Plaintiff's section 1692e(5) arguments with respect to licensing and pre-collection disclosures are addressed in a separate section of this memorandum.

cannot survive.

### D. Defendants did not use unfair means to attempt to collect Plaintiff's debt.

Plaintiff claims that filing the Affidavit of Indebtedness attached to the civil warrant was an unfair and unconscionable attempt to collect a debt, in violation of sections 1692f.[9] (Compl. ¶¶ 63-64, 81.) The Affidavit of Indebtedness sets forth PYOD's "right to collect the purchased balance owing of $5,344.20 plus any additional accrued interest." (Ex. H.) The civil warrant states that it seeks: "$5,344.20 plus pre and post judgment interest accruing at the statutory rate of 10% and court costs of this cause of $114.50, and service of process fees in the amount of $25.00."" (*See* Olson Aff. Ex. J.) When Plaintiff filed a sworn denial stating that he did not owe the debt, Buffaloe dismissed the case.

Plaintiff must now come forward with specific facts to support the claim that it was unfair or unconscionable to attempt to collect these amounts. Plaintiff cannot rely on blanket averments or speculative conclusions. Plaintiff has further claimed, under 15 U.S.C. § 1692f(1), that Defendants attempted to collect amounts not specifically authorized by the agreement creating the debt or otherwise permitted by law. (*See* Am. Compl. ¶ 74.) Here again, because Plaintiff can present no facts establishing that Defendants attempted to collect an amount not authorized by the underlying agreement or permitted by law, he is not entitled to a trial on these causes of action. *See, e.g.*, *White*, at pp. 11-12.

Defendants challenge Plaintiff to produce probative facts necessary to prove his

---

[9] 15 USC 1692f makes it unlawful for a debt collector to "use unfair or unconscionable means to collect or attempt to collect any debt."

14

claims. If he cannot – and Defendants maintain that he indeed cannot -- Plaintiff is not entitled to a trial on these causes of action. Accordingly, Plaintiff's section 1692f and 1692f(1) claims against Defendants deserve dismissal.

### E.    Defendants did not communicate false credit information to anyone.

Plaintiff claims that when Defendants filed with the court the Affidavit of Indebtedness attached to the civil warrant, Defendants communicated false credit information "to the General Sessions Court, the general public, and Plaintiff" in violation of 1692e(8).[10] (Compl. ¶ 73.) As set forth above, Plaintiff's claim that the Affidavit of Indebtedness is false is contrary to the undisputed evidence. It is undisputed that Griffin, in her Affidavit of Indebtedness, swore under penalty of perjury that the information contained therein was "true and correct to the best of [her] knowledge, information and belief[.]" (Ex. H.)

Notably, in *Grubb v. Portfolio Recovery Associates, LLC, Tanya Hollenbeck, and Nathan L. Horton*, Case No. 2:11-cv-00301 (E.D. Tenn. July 10, 2013), this Court found on the defendants' motion to dismiss that, where an affidavit makes clear that the affiant's statements were made "according to the business records" of the creditor, the "only reasonable and fair reading of the affidavit is that the amount of the alleged debt set forth therein and sought in the civil warrant was based on a review of the business records of [the creditor]", and not the affiant's personal knowledge. Such is the applicable situation even where the affidavit, as here, refers to the personal knowledge

---

[10] 15 USC 1692e(8) prohibits: "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

of the affiant.  (*Id.* at pp. 9-10.)  The *Grubb* court dismissed the debtor-Plaintiff's claim that the affidavit was false, misleading, or deceptive under the FDCPA.  (*Id.* at 10.)

Furthermore, as with any submission to the court, Buffaloe's attorney is bound by Rule 3.3 of the Rules of Professional Conduct, which Rule prohibits a lawyer from offering any evidence the lawyer knows to be false.  Just as in the *Collins* matter, the information received by PYOD from the original creditor in this matter has not been, and cannot be, contradicted.  Not only did Defendants not communicate false information to anyone, but Defendants believed in good faith the facts presented to the court were supported by the evidence (which they are).

Defendants again put Plaintiff to the test to establish that she can produce genuine facts to prove his claim that Defendants violated § 1692e(8).  Otherwise, if Plaintiff cannot -- and Defendants specifically contend that he cannot – then Plaintiff's claim requires dismissal.

## IV.    PLAINTIFF'S LICENSING-BASED CLAIMS FAIL.

In the Complaint, Plaintiff's attorney alleges that PYOD violated Tennessee statutes and the FDCPA by not being licensed as a collection service within the State of Tennessee.  (Compl. ¶¶ 76-81.)  As a preliminary matter, it is uncontested that PYOD is the owner of the debt at issue.  PYOD was also the sole Plaintiff in the collection lawsuit.  The question is whether PYOD was required, under Tennessee law, to have a collection service license.

The Tennessee Collection Service Board is the State agency specifically charged with issuing licenses to collection services and with enforcing licensing requirements. "The Board is authorized to promulgate rules governing the general conduct of

collection service businesses." Tenn. Code Ann. § 62-20-104(g). As part of its statutorily-delegated responsibilities, the Board may issue, revoke, suspend, or refuse to renew collection service licenses and may investigate and take action against businesses violating the Tennessee Collection Service Act. Tenn. Code Ann. § 62-20-115(a)(1).

As part of its responsibilities, the Board has issued a "Clarification Statement…Regarding Debt/Judgment Purchasers and 'Passive' Debt Buyers" ("Clarification Statement") that should be dispositive. The Board publishes the Clarification Statement on its official State of Tennessee government website:

> It is currently the opinion of the Tennessee Collection Service Board that entities who purchase judgments or other forms of indebtedness will be deemed a 'collection service' if they collect or attempt to collect the debt or judgment subsequent to their purchase of the debt or judgment. **However, entities who purchase debt or judgments in the manner described above but who do not collect or attempt to collect the purchased debt or judgment, but rather assign collection activity relative to the purchased debt to a licensed collection agency or law firm shall not be deemed to be a 'collection service.'**

http://tn.gov/commerce/boards/collect/documents/CSBCLARIFICATIONSTATEMENTREGARDINGDEBT.pdf (emphasis added). The Clarification Statement is consistent with Tenn. Code Ann. § 62-20-103(a)(2), which expressly exempts "attorneys at law" from the licensing requirements of Chapter 62. This Clarification Statement represents the legal standard presently being applied in Tennessee by the very state agency expressly tasked with licensing and overseeing collection services.

The Tennessee Collection Service Board first approved the content of this Clarification Statement at its January 2009 regular Board Meeting. As recently as May 9, 2012, the Tennessee Collection Service Board revisited the issue. The minutes

of the Board's meeting on that date reflect that in response to a direct request for an updated status on the Board's Clarification Statement, "[t]he Board reviewed the current statement and advised it would currently stand as written." (Olson Aff. Ex. M.) The Clarification Statement remains posted on the Board's official State of Tennessee website.

By its continuing publication of the Clarification Statement, the Board implicitly intends that the Statement serve as a guide upon which businesses operating in Tennessee may reasonably rely when considering whether a collection service license is required. Furthermore, as the minutes reflect, Chief Counsel for the Division of Regulatory Boards and two Assistant General Counsel were present for all or a portion of the meeting, assisting the Board. (*Id.*) Thus, the State agency charged with enforcing the relevant State law has provided regulatory guidance on the question of whether a debt buyer, utilizing an attorney at law to collect the debt, must be licensed as a collection service. According to State authorities, such a debt buyer need not be licensed.

In this case, it is undisputed that PYOD was a debt buyer that used an attorney at law, in a representative capacity, to attempt to collect Plaintiff's debt. Therefore, PYOD was not obligated under applicable Tennessee law and associated State regulatory requirements to obtain a collection service license from the Tennessee Collection Service Board.

Furthermore, the recent rulings in *Robinson v. Sherman Financial Group, LLC, et al*, discussed *infra*, and *White v. Sherman Financial Group, LLC, et al.*, Case No. 3:12-cv-404 (E.D. Tenn. Nov. 4, 2013), support PYOD's reading of and reliance on the

Clarification Statement. In *Robinson*, a case venued in the Eastern District of Tennessee with similar facts, and where LVNV Funding, LLC – a debt-purchasing entity functionally identical to PYOD – likewise assigned collection activities to a Tennessee law firm, the Court held on summary judgment that, "under the Clarification Statement of the Board, LVNV [is not] a 'collection service.'" *See Robinson v. Sherman Financial Group, et al.*, Case No. 2:12-cv-30, Docket No. 67 at p. 18 (E.D. Tenn. July 31, 2013). The *Robinson* Court reasoned that the Clarification Statement was applicable to LVNV, because LVNV is a debt/judgment purchaser that had assigned debt collection activities to the defendant law firm. (*Id.* at pp. 18-19.)[11] Moreover, the *Robinson* Court stated that the "the Clarification Statement provides guidance as to how the [statutory] provision defining a 'collection service' should be construed." (*Id.* at p. 18.) In denying plaintiff's motion to alter or amend the ruling on summary judgment, the *Robinson* court further held

> [T]he courts review an agency's interpretation of statutes without a presumption of correctness. Accordingly, it is surprising Plaintiff would argue the [Clarification Statement] is "void for any purpose and may not be used by this Court to excuse non-compliance with the TCSA licensing requirement." To the contrary, the statement is clearly appropriate to consider and is accorded due consideration and respect. The Court did just that when it relied on the interpretive guidance in its order.

---

[11] The *Robinson* and *White* decisions, further, are not alone. Although the case did not arise under the FDCPA, the court in *VFC Partners 10 LLC v. Cindy J. Collins*, Case No. 3:12-cv-00291 (Docket I.D. No. 24) (E.D. Tenn. June 7, 2013) granted summary judgment in favor of a party who had obtained debts via an assignment but pursued collection of those debts through the licensed attorneys of a Tennessee law firm. The Court stated that Defendants assertion "that Plaintiff itself is a collection service…entirely ignores the fact that Plaintiff is not attempting collection on its own; rather, it has engaged attorneys [to] attempt collection." *Id.* at p. 4. The Court went on to cite the March 14, 2012 Clarifying Statement of the Tennessee Collection Service Board holding that the attorney exemption, Tenn. Code Ann. § 62-20-102(3), applied to the attorneys who filed the lawsuit in a representative capacity on behalf of the client that owned the debt. *Id.*

*Robinson*, Case No. 2:12-cv-00030, Docket No. 89 at p. 4 (E.D. Tenn. October 29, 2013, internal citation omitted.) The *White* Court cited the July 31, 2013 *Robinson* holding in concluding, on similar facts, that LVNV was not a "collection service" under the Clarification Statement and, as such, was not required to have a collection service license. *White*, Case No. 3:12-cv-404, Docket No. 56 at pp. 14-15 (E.D. Tenn. Nov. 4, 2013).

The *Robinson* and *White* Courts' rulings are also consistent with principles underlying the doctrine of federal abstention. The U.S. Supreme Court has counseled in favor of abstention: "1) when there are difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case at bar; or 2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *See Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660-661 (6th Cir. 2002), *quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359-62, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (interpreting *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).) This *"Burford"* abstention "is used to avoid conflict with a state's administration of its own affairs." *Andrews v. Holly Tp.*, 216 F. Supp. 2d 676, 686 (E.D. Mich. 2002). *See also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 481 (6th Cir. 2004) ("[A]dministrative claims offer a classic explanation for applying *Burford* abstention.")

Here, the Tennessee Collection Service Board has been charged with the exclusive authority to license and regulate collection services within the state. The Board's responsibilities bear upon matters of significant statewide importance that go far

beyond the scope of this case alone.  The licensing statute at issue represents part of the State of Tennessee's own, independent regulatory scheme for maintaining oversight of certain businesses and professions within its borders.  Furthermore, the Board, by issuing in 2009 and continuously publishing thereafter its Clarification Statement, has attempted to apply a consistent policy on a matter of substantial public concern.  The piecemeal decisions by federal courts regarding the validity of the Clarification Statement are disruptive of the Board's legitimate efforts to maintain a coherent and uniform policy with respect to regulating collection services within the state, so that businesses can reasonably and in good faith rely upon the Board's direction and guidance.

If other recent briefing by Plaintiff's counsel is any indication, Plaintiff may argue in his opposition to this motion, citing *Christensen v. Harris County*, 529 U.S. 576 (2000), that informal opinions of state agencies, such as the Clarification Statement, are not entitled to deference from the federal courts. The *Christensen* case holds that opinion letters are entitled to respect and can be used as persuasive authority, but do not merit binding, "*Chevron*"-style deference (referencing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984)).  It is not *Chevron*-style deference that Defendants seek, however.  Rather, Defendants ask that the Court *consider* the Clarification Statement as guidance. Such consideration is entirely in keeping with the doctrine enunciated by the Supreme Court in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  In a wage and hour case, brought under the Fair Labor Standards Act, the *Skidmore* Court held

> We consider that the rulings, interpretations and opinions of the
> Administrator under this Act, while not controlling upon the courts by

> reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Here, the opinions of the Collection Service Board, similarly informed and reflective of the Board's expertise and experience, should be considered by the Court.

The Court should follow the *Robinson* and *White* Courts' reasoning and find that here, as in those matters, the Clarification Statement applies to PYOD. Accordingly, the Court should find that PYOD is not required to have a collection service license and should grant summary judgment in Defendants' favor on Plaintiff's licensing claims.

In support of his position, Plaintiff will presumably cite this Court's decision in *Raceday Center, LLC v. RL BB Financial, LLC*, 2013 WL 4500437 (E.D. Tenn. August 21, 2013), in which this Court adopted the Report and Recommendation of Magistrate Judge Inman. In that Report and Recommendation, Magistrate Judge Inman chose not to give deference to the Clarification Statement. The Defendants respectfully note, however, that in considering the impact of the Clarification Statement upon the interpretation of the Collection Service Act, Magistrate Judge Inman misstates the statute. The Magistrate Judge concludes that: "§103(2) merely says that attorneys at law engaging in collection matters have to also hold a license as a collection service." *Id.* at *5. Actually, the opposite is true. Section 62-20-103(a)(2) of the Collection

Service Act, under the title of "Exemptions," provides that it does not apply to attorneys at law.[12]

Moreover, consistent with that statute, the Tennessee Attorney General issued a formal opinion stating that licensed law firms retained by clients to pursue collection activities are not required to be separately licensed as collection services. *See* Op. Tenn. Att'y Gen. No. 00-105 (June 8, 2000) ("attorney exemption to the requirements of the Collection Service Act [is] applicable to those attorneys who seek to collect the debts owing to their clients who have retained them for their services as attorneys").

Summary judgment in favor of Defendants on this issue is entirely consistent with the underlying public policy supporting the licensing regulations adopted by Tennessee lawmakers. Applying Tennessee law, to collect a debt, a debt owner such as PYOD must either (1) have a collection service license to directly pursue collection activities, (2) retain a licensed collection service to collect the debt, or (3) as happened here, elect to retain a licensed law firm to conduct collection activities on its behalf. Under any of these three scenarios, the party directly collecting a debt in Tennessee is licensed by the State of Tennessee, and is subject to State's regulatory requirements and compliance apparatus. PYOD, as a plaintiff in a State court lawsuit brought by licensed Tennessee attorneys, was itself not required to be licensed and therefore did not violate

---

[12] Additionally, the *White* and *Robinson* Courts declined to follow *Raceday*. *See Robinson v. Sherman Financial Group, et al.*, Case No. 2:12-cv-30, Docket No. 67 at p. 18 (E.D. Tenn. July 31, 2013), and Docket No. 89 at 4-5 (E.D. Tenn. October 29, 2013) (denying plaintiff's motion for reconsideration); *White v. Sherman Financial Group, et al.*, 3:12-cv-00404, Docket No. 56 at p. 14-15 (E.D. Tenn. November 4, 2013). In *White*, the Court distinguished its decision from the earlier conclusion reached by the Court in *Lilly v. RAB Performance Recoveries, LLC*, No. 2:12-CV-364, 2013 WL 38344008 (E.D. Tenn. Aug. 2013). The Court noted that in *Lilly*, it was not made aware of the existence or import of the Clarification Statement until after it had reached its decision on summary judgment. *See White*, Docket No. 56, at p. 15, fn 5.

the FDCPA. Summary judgment on Plaintiff's licensing-based claims (i.e., her claims under 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f) is appropriate.

## CONCLUSION

Plaintiff cannot demonstrate the existence of any genuine issues of disputed material fact requiring trial on any of her claims under the FDCPA. Mere averments and unsubstantiated allegations will not carry the day. Plaintiff must produce probative evidence showing that Defendants' reliance on business records demonstrating the existence and amount of the debt owed by Plaintiff was somehow improper or constituted a violation of the FDCPA. Plaintiff has not made and cannot make such a showing. Therefore, Defendants respectfully request that Plaintiff's claims be dismissed with prejudice, pursuant to Fed. R. Civ. P. 56.

Respectfully submitted,

ADAMS AND REESE LLP

Dated:  November 19, 2013

By:  s/ Tricia T. Olson
Tricia T. Olson (#24643)
Rocklan W. King, III (#030643)
424 Church Street, Suite 2800
Nashville, Tennessee 37219
Tel:  (615) 259-1450
Fax: (615) 259-1470
Rocky.King@arlaw.com
tricia.olson@arlaw.com

**MOSS & BARNETT**
A Professional Association
Sarah E. Doerr (MN Bar #338679)*
John P. Boyle (MN Bar #186946)**
Matthew P. Kostolnik (MN Bar #310669)**
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-4129
Telephone: (612 877-5000)

*Admitted to practice in United States District Court for the Eastern District of Tennessee on April 30, 2012.

**Admitted to practice in United States District Court for the Eastern District of Tennessee on June 24, 2013.

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent via the Court's CM/ECF system to all parties and counsel indicated on the electronic filing receipt. Copies may also be accessed through the Court's electronic filing system.

This 19th day of November, 2013

s/ Tricia T. Olson
Tricia T. Olson